[No. S119897. Dec. 9, 2004.]

COALITION OF CONCERNED COMMUNITIES, INC., et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES, Defendant and Respondent;
CATELLUS RESIDENTIAL GROUP, Real Party in Interest and Respondent.

[black bars]

## Counsel

Law Office of Craig A. Sherman and Craig A. Sherman for Plaintiffs and Appellants.

Rockard J. Delgadillo, City Attorney, Susan D. Pfann, Jack L. Brown and Jeri L. Burge, Assistant City Attorneys, and Kenneth T. Fong, Deputy City Attorney, for Defendant and Respondent.

Latham & Watkins, Robert D. Crockett, Kathryn M. Davis and James R. Repking for Real Party in Interest and Respondent.

## Opinion

**CHIN, J.**—Government Code section 65590, subdivision (d) (section 65590(d)), part of the Mello Act, provides that "[n]ew housing developments constructed within the coastal zone" shall provide housing for those with low or moderate income where feasible. We must decide whether this provision applies to a proposed project that is partly within the coastal zone but has no housing impacts within that zone. Because the purpose of the Mello Act is to provide for affordable housing based on housing impacts *within* the coastal zone, we conclude that section 65590(d) does not govern this project.

### I. FACTS AND PROCEDURAL HISTORY

Real party in interest Catellus Residential Group (Catellus) proposes to develop approximately 45 acres of land near the Pacific Ocean in the Westchester-Playa del Rey area of Los Angeles. About 12 acres of the property is located within the California coastal zone. (See Pub. Resources Code, § 30103.)

Defendant City of Los Angeles (city) originally approved an earlier version of the proposed project. It concluded that the Mello Act's affordable housing requirement did not apply because none of the proposed houses would be constructed within the coastal zone. Plaintiffs Coalition of Concerned Citizens, Inc., and Spirit of the Sage Council (collectively, Coalition) commenced the instant action in March 1999 by filing a petition for writ of mandate in the

superior court challenging the city's approval of the project. As relevant here, the petition alleged that the project violated the Mello Act. (Gov. Code, §§ 65590, 65590.1.) After this action commenced, the Coastal Commission denied Catellus a coastal development permit. The trial court then stayed the instant action pending revision of the project.

Catellus revised the project. As currently proposed, the project includes 114 homes, all to be constructed outside the coastal zone, and about 19 acres of open space. The dissent in the Court of Appeal described the proposed construction within the coastal zone: "Proposed construction within the coastal zone includes the construction of part of an access road, widening of Lincoln Boulevard, construction of a public view park, and erosion control measures, all of which will involve the grading of a total of 2.31 acres of land within the coastal zone. A storm drain and water, sewer, and other utility lines also are to be constructed in or under the access road and partly within the coastal zone."

The city approved the new proposal. In August 2000, the Coastal Commission issued a coastal development permit. (The commission's issuance of the permit is being challenged in a separate action that is also before this court. (*Sierra Club v. California Coastal Com.*, review granted July 23, 2003, S116081.)) Coalition amended the petition for writ of mandate in October 2000 to challenge the city's approval of the revised project. It alleges that the project is located within the coastal zone and therefore must comply with Mello Act affordable housing requirements. After a hearing, the trial court rejected Coalition's contentions and entered a judgment denying the petition in February 2001. Coalition appealed.

The Court of Appeal affirmed the judgment. The majority, in an opinion by Justice Aldrich, held that "the Mello Act affordable housing requirement applies to a new housing development only if the development includes housing constructed within the coastal zone." Justice Croskey dissented on this point. He argued that "if a substantial part of the development is constructed within the coastal zone, as here, the affordable housing requirement will apply." We granted Coalition's petition for review limited to whether the Mello Act applies to this development.

## II. Discussion

The Legislature enacted Government Code section 65590, part of the Mello Act, in 1981. (*Venice Town Council, Inc. v. City of Los Angeles* (1996) 47 Cal.App.4th 1547, 1552 [55 Cal.Rptr.2d 465].) At issue in this case is section 65590(d), which states in part: "New housing developments constructed within the coastal zone shall, where feasible, provide housing units for persons and families of low or moderate income, as defined in Section

50093 of the Health and Safety Code."[1] Specifically, we must decide what the Legislature meant by "[n]ew housing developments." If, as here, a proposed housing development includes open space and infrastructure within the coastal zone, but every house will be outside the coastal zone, is it a housing development "constructed within the coastal zone" for purposes of this statute?

Catellus argues, and the Court of Appeal majority below found, that section 65590(d) applies only if some actual housing is constructed within the coastal zone. Coalition argues that the section applies if any part of the development is within the coastal zone. The dissent below argued that the section applies if a "substantial part" of the development is within the coastal zone. We conclude that section 65590(d) does not apply to a development like this which contains within the coastal zone no housing or even private amenities reserved for the exclusive use of the homeowners.[2]

Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy. (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57]; *People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129]; *People v. Ledesma* (1997) 16 Cal.4th 90, 95 [65 Cal.Rptr.2d 610, 939 P.2d 1310].)

---

[1] In its entirety, section 65590(d) provides: "New housing developments constructed within the coastal zone shall, where feasible, provide housing units for persons and families of low or moderate income, as defined in Section 50093 of the Health and Safety Code. Where it is not feasible to provide these housing units in a proposed new housing development, the local government shall require the developer to provide such housing, if feasible to do so, at another location within the same city or county, either within the coastal zone or within three miles thereof. In order to assist in providing new housing units, each local government shall offer density bonuses or other incentives, including, but not limited to, modification of zoning and subdivision requirements, accelerated processing of required applications, and the waiver of appropriate fees."

[2] Because the facts do not present the issue, we do not decide whether the Mello Act would apply if the project included within the coastal zone amenities that are an adjunct of a residential housing development and intended for the exclusive enjoyment of the homeowners, such as a golf course or other sporting facility.

We agree with the majority below that section 65590(d)'s words, "[n]ew housing developments constructed within the coastal zone," are ambiguous. (See *Citizens for Hatton Canyon v. Dept. of Transportation* (2003) 112 Cal.App.4th 838, 844 [5 Cal.Rptr.3d 480] [phrase "in the coastal zone" is ambiguous; it could either mean at least partially within the zone or entirely within the zone].) One could say that if *any* part of a proposed development that includes houses is within the coastal zone, the development is a housing development, and it is constructed within the coastal zone. One could also say, as did the dissent below, that if a *substantial part* of a proposed development that includes houses is within the coastal zone, the development is a housing development, and it is constructed within the coastal zone (although it is difficult to find the concept "substantial part" in the words of the statute). But it is also reasonable to say that if no house is constructed within the coastal zone, a development that includes houses constructed *outside* the coastal zone is not a *housing* development constructed *within* the coastal zone.

We also agree with the majority below that a review of the legislative history does not help to resolve the ambiguity. The parties discuss at some length the nature and significance of the city's position on this question as expressed in this case, in certain guidelines and interim procedures the city has adopted, and in an agreement to settle the litigation in *Venice Town Council, Inc. v. City of Los Angeles, supra,* 47 Cal.App.4th 1547. We conclude that the city's actions do not assist us in determining what the Legislature meant in enacting the Mello Act and, accordingly, do not consider those actions. The parties also debate the history and nature of the Coastal Commission's role in furthering the goal of providing affordable housing. This, too, we find unhelpful. Finally, noting that the Mello Act does not define the term, "[n]ew housing developments," the parties cite definitions of somewhat similar terms in other, generally unrelated statutes. We also find these definitions do not assist in deciding what the Legislature meant in this specific context. Instead, we find the answer to the question presented by considering the statutory language in context and in light of the statute's purpose.

■ One purpose of the Mello Act is "to preserve residential housing units occupied by low- or moderate-income persons or families in the coastal zone." (*Venice Town Council, Inc. v. City of Los·Angeles, supra,* 47 Cal.App.4th at pp. 1552–1553.) The act also seeks to create affordable housing in some circumstances. It promotes these purposes by two means. First, when existing affordable housing within the coastal zone is converted or demolished, it seeks to provide replacement affordable housing nearby. (Gov. Code, § 65590, subd. (b).) Second, when a new housing development is constructed within the coastal zone, it seeks to provide commensurate affordable housing nearby. (§ 65590(d).) The key circumstance triggering

these goals is the existence of, or proposal to create, a *housing impact* within the coastal zone. As the majority below stated, "the clear purpose of [section 65590(d)] is to require the provision of affordable housing based on activities conducted within the coastal zone." The majority also noted that Government Code section 65590, subdivision (a), provides that "[e]ach respective local government shall comply with the requirements of this section in that portion of its jurisdiction *which is located within the coastal zone*." (Italics added.) This language also suggests that housing impacts within the coastal zone are what matter, not housing impacts elsewhere.

The project proposed here will neither affect existing affordable housing nor have a new housing impact within the coastal zone. The project includes only some infrastructure and construction of a public view park within the coastal zone. No logical connection exists between the goal of encouraging the preservation or provision of affordable housing in the coastal zone and a development that includes no homes of any price range or any other amenities for the exclusive use of the homeowners, within that zone. A development that contains housing impacts solely outside the coastal zone may be subject to requirements pertaining to housing developments outside that zone, but no reason appears to believe the Legislature wanted to subject the same development to the Mello Act's additional coastal zone affordable housing requirements.

The dissent below and Coalition note that Government Code section 65590 sometimes refers to "housing developments" and sometimes uses terms like "dwelling units" and "residential structure." They assert that the "Legislature's separate use of these terms necessarily suggests that each must have a different meaning." However, the Legislature used the broader term "housing developments" when referring to the entire development, and the narrower terms when referring to individual units or structures. This use of the differing terms does not answer the question presented here—whether a development containing no housing impact within the coastal zone is a *housing* development that is constructed *within* the coastal zone.

We also see practical difficulties with Coalition's interpretation. An argument that the Mello Act applies whenever *any* part of a proposed housing development is within the coastal zone would be too broad to make practical sense. If, for example, a proposed development contains only a drainage pipe within the coastal zone, it is hard to imagine any reason to require affordable housing because of that drainage pipe. As another example, if a proposed development contains only one acre within the coastal zone that is meant to remain open space, and the only proposed construction within that acre is a public right of way to the beach, the developer could presumably avoid Mello Act affordable housing requirements by giving that acre to the local governmental entity. But if the entity did not want the land or could not afford to

build and maintain the right-of-way, and the developer agreed instead to build and maintain the right-of-way at its own expense, then, under Coalition's interpretation, this agreement would trigger the act's affordable housing requirements. Such a result would be counterproductive.

On the other hand, the dissent's position that the Mello Act applies when a *substantial part* of the development is within the coastal zone, while not so extreme, injects uncertainty into the planning process. As the majority below noted, the parties here and "future developers and municipalities [would be] left to speculate on a case-by-case basis [citation] whether a particular housing development is within the coastal zone or not. Such an ad hoc analysis lacks clarity and in all probability [would] lead to needless future litigation. [¶] [S]uch an amorphous standard provides no clear direction or predictability for future developments as to when this substantiality test is met. Examples . . . might include scenarios where only the main sewer line to a housing development traverses but a few feet of the coastal zone property or, as here, part of one of the main access roads traverses the same land. Or take the situation where there is to be no construction or excavation of any kind within the coastal zone, but some of the project acreage is to be left in its natural state as a habitat for rare species of plant or wildlife. Under any of these scenarios, the parties would never be able to predict whether they must consider the feasibility of affordable housing."

The most precise and easily predictable test is also the most logical one given the act's purpose: A housing development is a "[n]ew housing development[] constructed within the coastal zone" only if it will have a housing impact within the coastal zone. Because this project does not have such an impact, we agree with the majority below that it is not subject to the Mello Act.

### III. Conclusion

We affirm the judgment of the Court of Appeal.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., and Brown, J., concurred.

**MORENO, J.,** Concurring.—I concur in the result. I write separately to clarify what I believe to be the proper holding and rationale.

I agree with the majority that neither the language of the statute nor its legislative history can resolve the question before us, although the use of the

broad term "housing development" at least permits the possibility the Legislature was concerned with something beyond housing units in the strict sense. I also agree with the majority that the key to this case is to divine the legislative purpose of Government Code section 65590, subdivision (d) (hereafter section 65590(d)).

I believe the purpose of section 65590(d) was expressed in the Coastal Commission's Interpretive Guidelines to former Public Resources Code section 30213, which had mandated the Coastal Commission to protect and provide for "housing opportunities for persons of low and moderate income." (Stats. 1976, ch. 1330, § 1, p. 5958.) The Interpretive Guidelines state that section 30213 "is a recognition that meaningful access to the coast requires housing opportunities as well as other forms of coastal access." (Cal. Coastal Com., Interpretive Guidelines on New Construction of Housing (1981) § II.A, p. 13.) "The access, economic development and environmental policies of the Coastal Act all provide that the coastal zone will not be the domain of a single class of citizens but will instead remain available to the entire public; the provision of affordable housing benefits not only those who live in it but all members of society." (*Id.*, § II.B, p. 14.)

The Mello Act transferred the responsibilities for providing affordable housing within the coastal zone from the Coastal Commission to local governments. But I believe it retained the original purpose expressed in the above Interpretive Guidelines. The reason for the concern with the absence of affordable housing in the coastal zone is obvious. The coastal zone offers some of the choicest, and most expensive, land. The housing market, left to itself, might well make the coastal zone, or large portions of it, "the domain of a single class of citizens," i.e., the wealthy, contrary to the public policy of access embodied in the Coastal Act and transplanted in slightly different form into the Mello Act.[1]

If the goal of the Mello Act is not to have the coastal zone dominated by a single class, the means chosen to achieve that goal are to require the building of affordable housing in the coastal zone when affordable coastal housing is destroyed and, "where feasible," when any housing is constructed within the zone. (§ 65590(d).) When no housing is constructed within the coastal zone then, generally speaking, there is no issue of monopolization of coastal housing by the wealthiest citizens. But such is not invariably the case. Consider, for example a development that builds houses just outside the

---

[1] I note that the Mello Act includes moderate-income families with incomes of up to "120 percent of the area median income," with some flexibility to adjust that figure upward for certain geographic areas. (Health & Saf. Code, § 50093.) The Mello Act was evidently concerned, therefore, with the exclusion from the coastal zone of both low-income and middle-income families.

coastal zone boundary but constructs private amenities, e.g., golf courses or other sporting facilities, within the coastal zone. Such amenities would be occupying the coastal zone as an adjunct of residential development and would thwart the purpose of the Mello Act by making a portion of the coastal zone the exclusive domain, the backyard as it were, of wealthy homeowners.

As the majority correctly points out, the present case does not involve such private amenities. (Maj. opn., *ante*, at p. 737, fn. 2.) Rather, the portion of the coastal zone to be used includes various public improvements such as an access road, sewers, a storm drain, various utility lines, erosion control measures, and a public view park. These public improvements do not raise the issue of monopolization of coastal land by a single class that would be implicated by the construction of private facilities in the coastal zone that are an adjunct of residential development. I therefore concur in the majority's result.

Kennard, J., concurred.