178 Cal.App.4th 1271 (2009)
In re Z.C., a Person Coming Under the Juvenile Court Law.
ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Appellant,
v.
Z.G., Defendant and Respondent.
No. A123994.
Court of Appeals of California, First District, Division Two.
October 2, 2009.
*1275 Andrew James Massey, County Counsel, and Joanne Evelyn Morrison, Deputy County Counsel, for Plaintiff and Appellant.
Caroline Janes Todd, under appointment by the Court of Appeal, for Defendant and Respondent.

OPINION
LAMBDEN, J. 
In 1992, Z.C. was removed from her mother's custody immediately after being born. Z.G. (Z.G. or the guardian) was appointed the guardian for Z.C. at a hearing pursuant to Welfare and Institutions Code section 366.26.[1] Years later, after the Alameda County Social Services Agency (the agency) sought a more restrictive placement for Z.C., the juvenile court held a section 366.3 hearing. The court did not terminate the guardianship. Rather, it ordered reunification services to Z.G. to maintain the legal guardianship. The agency agrees that reunification services are appropriate, but challenges the juvenile court's authority to order them. The *1276 agency claims that, under section 366.3, subdivision (b), the court's power is limited to recommending that the agency provide services.
We conclude that the agency's construction of section 366.3, subdivision (b) would have absurd consequences not intended by the Legislature. Under the plain meaning of the statute when considered within the context of juvenile dependency law, section 366.3, subdivision (b) provides the juvenile court with the power to order the social services agency to provide reunification services to a legal guardian when deciding whether it is in the best interests of the child to maintain the existing legal guardianship. Accordingly, we affirm the judgment.

BACKGROUND
In 1992, right after the birth of Z.C., the agency filed a petition in juvenile court alleging that Z.C. was a person defined under section 300, subdivision (b). Z.C. was declared a dependent and placed with her maternal aunt, Z.G. In 1994, the court held the section 366.26 hearing and ordered a permanent plan of legal guardianship for Z.C. with Z.G.
Z.C. was delivered into protective custody on March 23, 2004, and placed in foster care. The agency filed a new petition on March 25, 2004, alleging failure to protect under section 300, subdivision (b), based on the guardian's inability to control Z.C.'s behavioral problems. Z.C.'s behavior improved while in foster care, and she returned to the guardian's home. At the hearing on April 8, 2004, the court dismissed the petition with an order for informal family maintenance services.
About four years later, on August 27, 2008, the agency filed a section 387 petition seeking a more restrictive placement for Z.C. The petition alleged that the guardian wanted to rescind the guardianship due to Z.C.'s behavior, which included refusing to observe household rules, refusing to attend school, making verbal threats to harm the guardian, hitting the guardian, and allowing her friends to enter the guardian's apartment without permission. The guardian was not in good health as she had suffered a stroke; she also had liver problems, diabetes, and high blood pressure. At the detention hearing on August 28, 2008, the court found removal necessary and set the matter for an uncontested hearing.
On November 6, 2008, the agency filed a petition under section 388, requesting the court to change its prior order appointing Z.G. as the guardian. The petition stated that it would be in the best interests of the minor to attempt to return the minor to the home of the legal guardian with six months of services. The court granted the agency's petition.
*1277 At the hearing on November 6, 2008, counsel for the agency argued that reunification services should be limited to six months. The attorneys for Z.C. and Z.G. argued that reunification services to the legal guardian under section 366.3 were not subject to a time limit of six months. The court set the matter regarding the length of time for reunification services to Z.G. for a contested hearing.
After holding the contested hearing, the juvenile court ruled on January 20, 2009, that section 366.3 did "not contain a maximum length of time that services to maintain a legal guardianship can be offered" and the court found that "the length of time that services should be offered to assist in maintaining a legal guardianship is the length of time consistent with the best interests of the child."
At the section 366.3 hearing on January 23, 2009, the agency told the court that "the question as to whether the court has the authority to order [services] or the court can merely recommend that the agency do so is significant to the agency because it will ultimately determine how this is paid for and how the agency will proceed going forward." The court dismissed the section 300 and section 388 petitions and sustained the allegations in the section 387 petition. It also ordered the agency to "provide services under section 366.3 in the best interest of the minor."
The agency filed a timely notice of appeal.

DISCUSSION

I. Authority to Order Reunification Services

(1) The agency filed a petition to change the legal guardianship and the juvenile court held a section 366.3 hearing to determine whether the terms of the legal guardianship should continue as is, be modified, or terminated.[2] Any proceeding to terminate a guardianship where the court had dismissed its dependency jurisdiction following the establishment of a legal guardianship, as in this case, is governed by section 366.3, subdivision (b). At the conclusion of the section 366.3 hearing, the juvenile court ordered reunification services to the guardian. The agency contends that this statute does not provide the lower court with the authority to order reunification services and that the agency retains the discretion to decide whether to provide services and, if it provides them, it can decide when to terminate them. Thus, the question before us is the interpretation of section 366.3.

*1278 A. Standard of Review

(2) "The determination of the meaning of a statute is a question of law that is subject to de novo review ...." (In re Z.R. (2008) 168 Cal.App.4th 1510, 1512 [86 Cal.Rptr.3d 495]; see also In re Darlene T. (2008) 163 Cal.App.4th 929, 937 [78 Cal.Rptr.3d 119].) "In statutory construction cases, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute." (Estate of Griswold (2001) 25 Cal.4th 904, 910 [108 Cal.Rptr.2d 165, 24 P.3d 1191].) "`We begin by examining the statutory language, giving the words their usual and ordinary meaning.'" (Id. at p. 911.) "If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs." (Ibid.; see also In re Do Kyung K. (2001) 88 Cal.App.4th 583, 590-591 [106 Cal.Rptr.2d 31].)
"`Additionally, however, we must consider the [statutory language] in the context of the entire statute [citation] and the statutory scheme of which it is a part.'" (Phelps v. Stostad (1997) 16 Cal.4th 23, 32 [65 Cal.Rptr.2d 360, 939 P.2d 760].) "`"When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole."'" (Ibid.) If the language is clear and a literal construction would not result in absurd consequences that the Legislature did not intend, the plain meaning governs. (Coalition of Concerned Communities, Inc. v. City of Los Angeles (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].) "[I]f a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation]." (Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) When the language is ambiguous, we may consider a variety of extrinsic aids, including the purpose of the statute, legislative history, and public policy. (Coalition of Concerned Communities, Inc., supra, at p. 737.)

B. Interpreting Section 366.3, Subdivision (b) Within the Context of Dependency Law

The agency contends that section 366.3, subdivision (b) does not give the juvenile court authority to order reunification services. Rather, the statute permits the court, according to the agency, only to make recommendations to the agency to provide services. Z.G. disagrees and argues that the plain meaning of the statute authorizes the court to order reunification services if it determines that maintaining the legal guardianship with reunification services would serve the best interests of the child.
*1279 Section 366.3, subdivision (b) provides in pertinent part: "Notwithstanding Section 1601 of the Probate Code, the proceedings to terminate a legal guardianship that has been granted pursuant to Section 360 or 366.26 shall be held either in the juvenile court that retains jurisdiction over the guardianship as authorized by Section 366.4 or the juvenile court in the county where the guardian and child currently reside, based on the best interests of the child, unless the termination is due to the emancipation or adoption of the child. The juvenile court having jurisdiction over the guardianship shall receive notice from the court in which the petition is filed within five calendar days of the filing. Prior to the hearing on a petition to terminate legal guardianship pursuant to this subdivision, the court shall order the county department of social services or welfare department having jurisdiction or jointly with the county department where the guardian and child currently reside to prepare a report, for the court's consideration, that shall include an evaluation of whether the child could safely remain in, or be returned to, the legal guardian's home, without terminating the legal guardianship, if services were provided to the child or legal guardian. If applicable, the report shall also identify recommended family maintenance or reunification services to maintain the legal guardianship and set forth a plan for providing those services. If the petition to terminate legal guardianship is granted, either juvenile court may resume dependency jurisdiction over the child, and may order the county department of social services or welfare department to develop a new permanent plan, which shall be presented to the court within 60 days of the termination. If no dependency jurisdiction has attached, the social worker shall make any investigation he or she deems necessary to determine whether the child may be within the jurisdiction of the juvenile court, as provided in Section 328."
(3) Under section 366.3, subdivision (b), in a proceeding to terminate a legal guardianship granted pursuant to section 366.26, which occurred in the present case, the juvenile court retains jurisdiction over the guardianship based on the "best interests of the child ...." (§ 366.3, subd. (b).) Furthermore, "[a]ny minor for whom a guardianship has been established resulting from the selection or implementation of a permanency plan pursuant to Section 366.26 is within the jurisdiction of the juvenile court...." (§ 366.4, subd. (a).) The purpose of section 366.4 is to provide the juvenile court with continuing jurisdiction over guardianships established in the juvenile court. (In re D.R. (2007) 155 Cal.App.4th 480, 486-487 [66 Cal.Rptr.3d 151].)
In giving the juvenile court continuing jurisdiction over the guardianship, the dependency statutes require the court to consider the child's best interests. The overriding purpose of the hearings in dependency cases is to implement the best interest of the child. (See, e.g., In re Lauren R. (2007) 148 Cal.App.4th 841, 855 [56 Cal.Rptr.3d 151].) Indeed, an application to terminate a guardianship created by the juvenile court is governed by section 388. *1280 (§ 360.) Section 388 provides that a juvenile court may change an earlier issued order, such as an order creating a legal guardianship, "[i]f it appears that the best interests of the child may be promoted by the proposed change of order...." (§ 388, subd. (d), italics added.)
(4) When interpreting section 366.3, subdivision (b), we must harmonize this statute within the dependency scheme, which "identifies the legislative preferences for providing permanent and stable homesadoption, guardianship, and long-term foster care.... [T]he statute establishes a presumption favoring guardianship over long-term foster care (§ 366.26, subd. (c)(4)) because guardianship is recognized as a more stable placement. [Citation.] In some dependency proceedings, the best available permanent alternative may be long-term foster care, but it is still presumed that guardianship is the better option." (In re Jessica C. (2007) 151 Cal.App.4th 474, 483 [59 Cal.Rptr.3d 855].) The "overall intent of the dependency scheme [is] to protect children from abuse or neglect and to provide permanent, stable homes if those children cannot be returned home within a set period of time." (Ibid.)
(5) Here, section 366.3, subdivision (b) plainly provides the juvenile court with the authority to determine whether the legal guardianship should be maintained and whether it would be in the child's best interest to maintain the legal guardianship with reunification services. Prior to making this determination, the court "shall order the county department of social services or welfare department ... to prepare a report, for the court's consideration, that shall include an evaluation of whether the child could safely remain in, or be returned to, the legal guardian's home, without terminating the legal guardianship, if services were provided to the child or legal guardian. If applicable, the report shall also identify recommended family maintenance or reunification services to maintain the legal guardianship and set forth a plan for providing those services." (§ 366.3, subd. (b).)
To require the juvenile court under section 366.3, subdivision (b) to consider the agency's report regarding the necessity of reunification services to maintain the legal guardianship without providing it with the concomitant power to order reunification services would result in an "`"`absurdity'"'" (In re Do Kyung K., supra, 88 Cal.App.4th at p. 591) and contravene the policy of ensuring that the child's best interests are being implemented. "Unquestionably, the juvenile court is in the best position to decide the means most likely to lead to stability and permanency in these children's lives ...." (In re Jessica C., supra, 151 Cal.App.4th at p. 484.)
(6) Under the plain meaning of the statute as well as a consideration of the objectives and purpose of the dependency statutes, we hold that section 366.3, subdivision (b) confers the juvenile court with the authority to order *1281 reunification services to the legal guardian when, after considering the agency's report, it deems that such services are necessary and that keeping the child in the legal guardian's home is in the child's best interests.
Our interpretation of the statute is consistent with other court decisions that have considered section 366.3. In In re Carlos E., we held that the legal guardian is not entitled to reunification services and the juvenile court does not have to make a finding that adequate reunification services were offered. (In re Carlos E. (2005) 129 Cal.App.4th 1408, 1418-1419 [29 Cal.Rptr.3d 317].) We stated that, "[a]t most, the juvenile court may order informal supervision of the legal guardian in order to assist in `ameliorating' the conditions that led to the request to terminate the legal guardianship." (Id. at p. 1419, fn. omitted, italics added.) We noted in In re Carlos E. that the social services agency had not filed a petition to terminate the legal guardianship but, had it filed one, the court would have been provided with the report required under section 366.3 and "[t]he court could then have determined whether it was in [the minor's] best interests to deny or grant the petition or order maintenance services to [the legal guardian] .... This, and no more, is what the Legislature intended to maintain or terminate a legal guardianship created by the juvenile court." (In re Carlos E., supra, at p. 1419, italics added.) Although in In re Carlos E. no party challenged the court's authority to order reunification services under section 366.3, subdivision (b), and therefore the construction of the statute was not an issue on appeal, we interpreted the statute as providing the court with this power.
Similarly, no party in In re Jessica C. argued that the court did not have the power to order reunification services under section 366.3, subdivision (b), but the Fifth District implicitly interpreted the statute as giving the court this power. (In re Jessica C., supra, 151 Cal.App.4th 474.) The Fifth District in In re Jessica C. held that the lower court erred by terminating a legal guardianship without first considering whether providing services could have preserved the guardianship. (Id. at p. 478.) The appellate court stressed that, "[i]n order to determine the children's best interests, the court was obligated by statute to consider whether maintenance services to [the legal guardian] could have been provided to save the guardianship." (Id. at p. 483.) The court explained: "The Legislature recognized that if the juvenile court's initial choice for a permanent plan of guardianship fails to serve a child's best interests, before moving to a less stable placement, the court should consider whether there is a way to preserve the guardianship. Doing so includes providing services to the legal guardian if necessary. Section 366.3 requires that this information be given to and considered by the juvenile court and, by implication, authorizes that identified services be provided if they are likely to prevent termination of the guardianship." (Id. at p. 484.) Implicit to a holding that the lower court errs when it fails to consider whether reunification services could sustain the guardianship is a conclusion that the court has *1282 the discretion to order such services. Otherwise, the failure to consider whether reunification services could maintain the guardianship would be harmless error.
The agency disregards any language in the above mentioned decisions indicating that the juvenile court could order reunification services by asserting that such statements were dicta. The agency maintains that the policy consideration of promoting stability for the child, which was discussed in these cases, supports its construction of the statute that the court can only recommend services. The agency contends that, if the court orders reunification services, the legal guardian may believe that he or she is entitled to such services and then dispute the adequacy of them, and such a dispute could delay the outcome of the proceedings. The agency further claims that the minor will suffer by losing his or her sense of permanency and stability and the legal guardian will suffer by being given false expectations. The agency adds that "[t]he better policy is to provide for a meaningful discussion of options and considerations of the services available, with the agency retaining discretion as to the delivery of the services. If the services are voluntary on the part of the agency and limited according to the agency's discretion, there will be fewer delays."
The agency's policy argument is without merit. As the court in In re Jessica C. pointed out, the statutes favor guardianship over long-term foster care because guardianship is recognized as a more stable placement and the court is in the best position to determine whether services are needed. (In re Jessica C., supra, 151 Cal.App.4th at pp. 483-484.) Given the court's continuing jurisdiction and the fact that it is in the "best position to decide the means most likely to lead to stability and permanency" in the child's life (id. at p. 484), it would be absurd to require the court to determine whether services would be best for the child and then require the court to permit the agency to decide unilaterally not to provide any services or to terminate the services.
The agency argues that it is significant that the Legislature used the word "order" when stating that a parent is entitled to notice and an opportunity to obtain an order for reunification services (see § 366.3, subds. (b), (f)),[3] but *1283 did not use similar language when referring to the legal guardianship. The agency concludes that this difference in language shows that the Legislature must not have intended for the court to have the authority to order the agency to provide reunification services. The agency further claims that the use of the subjunctive tense of certain verbs in the statute indicates that the report's evaluation and the agency's recommendation are being placed in a hypothetical context.
The agency's argument is not persuasive. The statute uses different language when referring to the parents than it does when discussing a legal guardianship because parents and guardians have different rights and the court's obligations are different in each of these situations. Section 366.3, subdivision (b) merely provides that, if the parental rights have not been terminated, a parent must receive notice of the hearings and may present evidence that reunification services are in the child's best interests. If the court determines that reunification services to the parent would be in the child's best interests, it may order them to restart. Since the court does not have to consider whether to provide reunification services to the parent, the statute specifies that the court may issue such an order. The court, however, in carrying out its role of determining the child's best interests must consider whether reunification services would be in the child's best interests prior to terminating the legal guardianship. Since the court must consider whether to provide reunification services to the legal guardian, any language in the statute stating that the court may issue an order for reunification services would have been superfluous.
With regard to the agency's argument that it is significant that the subjective tense was used, the statute states that the agency is "to prepare a report, for the court's consideration, that shall include an evaluation of whether the child could safely remain in, or be returned to, the legal guardian's home, without terminating the legal guardianship, if services were provided to the child or legal guardian." (§ 366.3, subd. (b).) The subjunctive tense is used because the agency cannot state with certainty what will happen if reunification services are offered. The agency's report is to provide a prediction based on the social worker's observations and is to aid the court in its decision whether to terminate the legal guardianship. The use of the subjunctive does not suggest that the court has no power to order reunification services when it finds such services are in the child's best interest.
*1284 Accordingly, we conclude that, if the juvenile court determines it is in the child's best interests to maintain the legal guardianship with the social services agency providing reunification services to the legal guardian and/or the child, the court has the authority under section 366.3, subdivision (b) to order the agency to provide such services.

C. Legislative History

Although a legislative analysis is not necessary because the interpretation of section 366.3, subdivision (b) urged by the agency would have absurd consequences, we note that the legislative history provides support for our construction of the statute.
In 2007, the Legislature amended section 366.3, subdivision (b) with Assembly Bill No. 298 (2007-2008 Reg. Sess.) (Assembly Bill 298).[4] (Stats. 2007, ch. 565, § 5.) This amendment, among other things, added the phrase "family maintenance or reunification" to the sentence describing the services that must be identified in this report. The Assembly Floor Analysis of the bill provided the following: "Finally, in an effort to help support legal guardianships and protect children's right to stable and permanent homes, this bill allows the court to order reunification services to legal guardians. Under current law, when faced with temporary problems in a kinship care household, the dependency court has only limited options. The court may leave the child in the home and provide limited services or terminate the guardianship. This bill provides the court with a third optionremove the child temporarily from the home and provide reunification services to the child and the relative caregiver. While such an option will not always be the appropriate one to use, providing courts with the discretion to offer reunification services when suitable should help keep children in stable and permanent homes, while still protecting their safety." (Conc. in Sen. Amends., Assem. Bill No. 298 (2007-2008 Reg. Sess.) as amended Sept. 4, 2007, p. 4, italics added.)
The agency attempts to characterize this legislative history as establishing an "inconsistency" and argues that the Assembly floor analysis is irrelevant because various terms such as "temporary problems" and "kinship care household" are not defined. The legislative history, however, further confirms *1285 that the Legislature intended to provide the court with the power to order reunification services to the legal guardian to promote stability in the minor's life.

D. California Rules of Court, Rule 5.740(c)(3)

The agency argues that California Rules of Court, rule 5.740(c)(3) supports its assertion that the court may only recommend that the agency provide reunification services to the legal guardian.
California Rules of Court, rule 5.740(c)(3) states: "At the hearing on the petition to terminate the guardianship, the court may do one of the following: [¶] (A) Deny the petition to terminate guardianship; [¶] (B) Deny the petition and request the county welfare department to provide services to the guardian and the ward for the purpose of maintaining the guardianship, consistent with section 301; or [¶] (C) Grant the petition to terminate the guardianship."
Section 301 reads in pertinent part: "(a) In any case in which a social worker, after investigation of an application for petition or other investigation he or she is authorized to make, determines that a child is within the jurisdiction of the juvenile court or will probably soon be within that jurisdiction, the social worker may, in lieu of filing a petition or subsequent to dismissal of a petition already filed, and with consent of the child's parent or guardian, undertake a program of supervision of the child. If a program of supervision is undertaken, the social worker shall attempt to ameliorate the situation which brings the child within, or creates the probability that the child will be within, the jurisdiction of Section 300 by providing or arranging to contract for all appropriate child welfare services pursuant to Sections 16506 and 16507.3, within the time periods specified in those sections. No further child welfare services shall be provided subsequent to these time limits. If the family has refused to cooperate with the services being provided, the social worker may file a petition with the juvenile court pursuant to Section 332. Nothing in this section shall be construed to prevent the social worker from filing a petition pursuant to Section 332 when otherwise authorized by law. [¶] (b) The program of supervision of the child undertaken pursuant to this section may call for the child to obtain care and treatment for the misuse of, or addiction to, controlled substances from a county mental health service or other appropriate community agency."
The agency cites the language specifying the court may "request the county welfare department to provide services to the guardian and the ward ... consistent with section 301" in California Rules of Court, rule 5.740(c)(3)(B) and the phrase "the social worker may, in lieu of filing a *1286 petition or subsequent to dismissal of a petition already filed, and with consent of the child's parent or guardian, undertake a program of supervision of the child" in section 301. The agency argues that the use of the words "consistent with" means simply that the services only need to be "compatible with," not identical to, those services referenced in section 301. (See Muzzy Ranch Co. v. Solano County Airport Land Use Com. (2008) 164 Cal.App.4th 1, 9 [78 Cal.Rptr.3d 691] [when interpreting "consistent with" in a provision of the Pub. Util. Code, the court concluded this suggested that the standards only had to be compatible with and not identical to the standards in the federal study].) The services in section 301 are short term and provided at the agency's discretion. The agency maintains that giving it the discretion to provide services to the guardian is compatible with section 301.
(7) Contrary to the agency's assertions, California Rules of Court, rule 5.740(c)(3) does not divest the juvenile court of its authority to fashion orders in the best interest of the minor while maintaining its continuing jurisdiction over the legal guardianship. (See § 366.4.) As already discussed, the agency's construction would render nugatory the purpose and plain meaning of section 366.3, which is to empower the court to determine and order what is in the best interest of the child. (See, e.g., In re Carlos E., supra, 129 Cal.App.4th at p. 1419.) Clearly, the language in California Rules of Court, rule 5.740(c) does not alter the juvenile court's plenary jurisdiction over guardianships under section 366.4 and its authority to order services consistent with its determination of what is in the child's best interests.
(8) Finally, the language in section 301 cited by the agency does not abrogate the juvenile court's authority to order services. Rather, this section simply provides that the agency may undertake a program of supervision of the child rather than filing a petition in the court. Moreover, section 301 specifies that when a program of supervision is undertaken, "the social worker shall attempt to ameliorate the situation ...." Thus, the agency's discretion is clearly not unfettered. Section 301 provides the agency with the discretion to decide whether to file a petition and describes the voluntary services the agency may choose to provide outside of the court's jurisdiction. This statute does not provide the agency with the choice to refuse to provide services the court determines are necessary to ameliorate the situation when a petition has been filed and the court has continuing jurisdiction.

II. Separation of Powers

The agency contends that the juvenile court violated the separation of powers doctrine by ordering the agency to provide reunification services to the legal guardian and minor. This argument also has no merit.
*1287 The California Constitution provides the following: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." (Cal. Const., art. III, § 3.)
(9) Division Five of this court in In re Ashley M. (2003) 114 Cal.App.4th 1 [7 Cal.Rptr.3d 237], discussed the power of the juvenile court. The court explained: "The juvenile court is a special department of the superior court whose powers are limited to those granted by the Juvenile Court Law ..." (see § 200 et seq.) plus those incidental thereto. (In re Ashley M., supra, at p. 6.) "Under the Juvenile Court Law, the juvenile court is authorized to make orders pertaining to abused or neglected children who come within the court's jurisdiction. (§§ 361, 362.)" (In re Ashley M., supra, at p. 7.)
(10) With regard to the county's social services agency, the court in In re Ashley M. observed that it played "a `hybrid' role in dependency proceedings, exercising both executive and judicial functions. [Citation.] `The juvenile law system envisions a cooperative effort between the [social services agency] and the juvenile court.' [Citation.] The social services agency has the initial responsibility to investigate allegations of abuse or neglect and has authority to take temporary custody of an abused or neglected child. (§ 306.) But the agency must account to the court on the reasons for removing the child from home and on the services available to facilitate the child's return. (§ 319.) When, at the disposition hearing, the court decides to keep the child out of parental custody, the court must (with exceptions) order the social services agency to provide child welfare services to the parents and the child with the aim of reuniting the family. (§§ 300.2, 361.5, subd. (a).)" (In re Ashley M., supra, 114 Cal.App.4th at p. 7.)
The court in In re Ashley M. further explained: "In providing child welfare services, the county's social services agency acts as an administrative agency of the executive branch, subject to supervision by the State Department of Social Services. [Citations.] The juvenile court maintains ultimate control over the delivery of services through its authority to decide that the services offered or provided to the parents were unreasonable and that further services must be offered by the social services agency. (§§ 366, subd. (a)(1)(B), 366.21, subds. (e), (f), 366.22, subd. (a), 366.26, subd. (c)(2) ....)" (In re Ashley M., supra, 114 Cal.App.4th at p. 7, fn. omitted.) When making reports at the dependency proceedings, the social services agency "acts as an impartial arm of the court in assisting the court to carry out the Juvenile Court Law." (In re Ashley M., at p. 8, italics added.)
(11) Here, as already discussed, the juvenile court had authority under section 366.3, subdivision (b) to order the agency to provide reunification *1288 services to the legal guardian and the child. The statute required the agency to prepare a report on reunification services for the court's consideration; thus, in preparing the report, the agency was acting in its role of assisting the court to carry out the juvenile court law. (See In re Ashley M., supra, 114 Cal.App.4th at p. 8.) The court in In re Ashley M. pointed out that the juvenile court has the remedy of ordering further services if it finds that the social services agency has failed to provide adequate services. (Id. at p. 9.) Under section 366.3, subdivision (b), the juvenile court has the authority to order reunification services to the legal guardian and child and the power to assess the adequacy of the services rendered by the agency.
The agency also cites to In re Darlene T., supra, 163 Cal.App.4th 929. In In re Darlene T., the appellate court held that the juvenile court had exceeded its authority in ordering retroactive foster care payments to a grandmother because the grandmother had not exhausted the administrative review procedure and the law dictates that an applicant must exhaust the administrative remedies before a court may consider the issue. (Id. at pp. 941-942.)
In re Darlene T. is irrelevant to the issue presented here. The juvenile court in the present case has not ordered retroactive payments and there is no administrative review statute at issue.
The agency argues that it is not reimbursed "for voluntary services such as those placed within its discretion by the statutory scheme here." It claims that therefore this situation is similar to the one in In re Darlene T. because the court in the present case is ordering the agency to use its own funds, and such expenditures are within its own administrative determination and control. As already discussed, the agency is not voluntarily providing the services, but providing them pursuant to a court order. There is nothing in this record establishing that the agency is not reimbursed for these funds; indeed, there is nothing in the record regarding the funding of these services.[5]
Accordingly, we conclude that the juvenile court did not violate the separation of powers doctrine when it ordered the agency to provide reunification services to the legal guardian pursuant to section 366.3, subdivision (b).

*1289 DISPOSITION
The judgment is affirmed.
Kline, P. J., and Richman, J., concurred.
NOTES
[1] All further unspecified code sections refer to the Welfare and Institutions Code.
[2] The agency filed various petitions in the juvenile court. The agency and Z.G. agree that the governing statute is section 366.3, subdivision (b).
[3] Section 366.3, subdivision (b) provides: "Unless the parental rights of the child's parent or parents have been terminated, they shall be notified that the legal guardianship has been revoked or terminated and shall be entitled to participate in the new permanency planning hearing. The court shall try to place the child in another permanent placement. At the hearing, the parents may be considered as custodians but the child shall not be returned to the parent or parents unless they prove, by a preponderance of the evidence, that reunification is the best alternative for the child. The court may, if it is in the best interests of the child, order that reunification services again be provided to the parent or parents."

Similarly, section 366.3, subdivision (f) reads: "Unless their parental rights have been permanently terminated, the parent or parents of the child are entitled to receive notice of, and participate in, those hearings. It shall be presumed that continued care is in the best interests of the child, unless the parent or parents prove, by a preponderance of the evidence, that further efforts at reunification are the best alternative for the child. In those cases, the court may order that further reunification services to return the child to a safe home environment be provided to the parent or parents up to a period of six months, and family maintenance services, as needed for an additional six months in order to return the child to a safe home environment."
[4] The Legislature amended section 366.3 with Assembly Bill No. 2070 (2007-2008 Reg. Sess.), effective January 1, 2009, in a manner not relevant to the issue on appeal. (Stats. 2008, ch. 482, § 7.)
[5] In its reply brief, the agency asserts the following: "The entire legislative history of [section] 366.3 ... is without provision for funding for reunification or family maintenance services to juvenile court-appointed guardians. Under these circumstances, the expenditure of agency resources for such services must remain within the agency's discretion." No evidence regarding funding was submitted to the trial court and therefore this issue is not properly before us.