Filed 8/27/14  T.W. v. Super. Ct. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| T.W.,<br><br>　　　Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>　　　Respondent;<br><br>CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU,<br><br>　　　Real Party in Interest. | A142179<br><br>(Contra Costa County<br>Super. Ct. No. J11-01448) |

　　　This is a petition for an extraordinary writ, as authorized by rule 8.452 of the California Rules of Court.  The petitioner is a mother who seeks to have overturned the order of respondent Superior Court setting a hearing pursuant to Welfare and Institutions Code section 366.26[1] at which petitioner's parental rights may be terminated with respect to petitioner's daughter.  She contends that the daughter should have been returned to her custody, and with additional reunification services.  We conclude both contentions are without merit, and deny the petition on the merits.

---

[1] Statutory references are to the Welfare and Institutions Code.

**BACKGROUND**

The underlying dependency began in October 2011, when the minor was 13 years of age. Real Party in Interest Contra Costa County Children and Family Services Bureau (Bureau) filed a petition in which it was alleged that the minor qualified as a dependent because petitioner and the presumed father (who is not a party to this proceeding) failed to protect the child (§ 300, subd. (b)). The minor was immediately detained. Petitioner did not contest the allegation. It was not until June 2012 that the minor was adjudged a dependent, placed with the Bureau, and petitioner ordered to receive services that would promote reunification with her daughter.

For the combined six-month and 12-month review hearing, the Bureau submitted a lengthy report advising the juvenile court that the minor was a freshman in high school, "has a history of doing well academically and we believe she is capable of passing all of her academic classes." Her placement with foster parents "is going very well. The foster parents are committed to raising [the minor] to majority and have embraced her as part of their family. The minor "does not believe that she can return to the care of her mother as long as the father remains in the home. She is afraid of her father. She would like to remain in her current foster home." Both parents "have never acknowledged responsibility" for the necessity of judicial intervention. "The Bureau respectfully recommends that the Court terminate Family Reunification Services as to both parents and set a 366.26 hearing to establish a permanent plan" of long term foster care for the minor. The juvenile court accepted these recommendations in January 2013.

The next scheduled action was for what the Bureau termed "Post Permanent Plan Review Hearing" in July 2013 In its "Status Review Report" for that hearing, the Bureau informed the court that the minor had encountered difficulties. She completed her freshman year of high school, but her disappointing academic performance was attributed to excessive socializing with peers, as well as "minor and expected rebellion often associated with this age group." Her placement had been changed to her godmother.

Petitioner was reported to have suffered a "psychiatric crisis" that at least once necessitated her involuntary commitment, but the information known by the Bureau was

incomplete.[2]  The case worker hoped that visitation would resume "once [petitioner's] mental health has stabilized."  The court was advised that the minor's "recent placement with her Godmother will hopefully provide her with a better sense of being with family and therefore, impact her sometimes melancholy disposition.  It is highly unlikely, given [petitioner's] behavior over the past year, that she will do what she needs to do to create a change in the permanent plan.  With this in mind, this [case]worker will be assessing the appropriateness of creating a permanent plan of guardianship with the Godmother.  In the meantime," the Bureau's recommendation was that "the court continue the Permanent Plan of Long Term Foster Care and set a review for six months."

At the brief July hearing, petitioner was described as "recently hospitalized" and not in contact with the Bureau.  Although petitioner was present, no further detail was provided.  With one exception not material here, petitioner did not contest the Bureau's recommendation which was accepted by the court.

The next status review hearing was held in December of 2013.  The caseworker informed the court that petitioner had repeated hospitalizations since September, and had been diagnosed with "Adjustment Disorder with mixed anxiety and depressed mood."  The caseworker had spoken to petitioner's therapist, who "stated in her professional opinion" that petitioner cannot care for children "any time soon," and certainly not "at this time."  Visitation had resumed only the month before.  The minor's academic performance had improved, and was expected to improve even further.  The minor was now placed with a maternal cousin.  The Bureau's assessment and recommendation remained the same—"that the court continue the Permanent Plan of Long Term Foster

---

[2] "[Petitioner], at last report, was hospitalized  at the Martinez Medical Center and on a 5152 hold due to a psychiatric crisis.  Over the last several months, [petitioner] went to and from the maternal grandmother's home in San Francisco as a result of ongoing conflict with [the father]. [Petitioner] indicated that the conflicts escalated into some physical contact.  She was hospitalized after a 5150 hold while with [the father] in Antioch."  The "5150" and "5152" references are to provisions of the Lanterman-Petris-Short Act, which allows a person who, "as a result of a mental health disorder, is a danger to others, or to himself or herself," to be held for "up to 72 hours for assessment, evaluation, and crisis intervention."  (§ 5150, subd. (a).)

Care and set a review for six months." Those recommendations were again accepted by the court.

The final status review was held on June 4, 2014. The caseworker had no new information about petitioner's mental state, but her situation had apparently stabilized, and petitioner was now living with her mother in San Francisco. Petitioner has not visited since November 2013. The minor's was still placed with the maternal cousin. The placement was going so well that the Bureau "is seeking legal guardianship . . . with the maternal cousin. [¶] . . . [¶] The Bureau asserts that legal guardianship is the most appropriate plan . . . at this time. At this point, [petitioner] continues to not demonstrate stability and could not provide care for [the minor]. [Petitioner's] Family Reunification services were terminated on January 28, 2013 . . . . The difficulties that brought the family to this dependency court are not being addressed by . . . the mother." The minor's current placement "has provided her with a better sense of being with family and has had a positive impact on her life. It is highly unlikely, given [petitioner's] behavior over the last year, that she will do what she needs to do to create a change in the permanent plan." The Bureau's final recommendation was that the court set a "section 366.26 hearing."

Much of the hearing was devoted to an issue not germane to this appeal, namely, the mechanics and propriety of a motion that might establish a reason that would preclude termination of parental rights as to a younger sibling. The only witness was caseworker Victoria King, and virtually all of her testimony related to that same issue. However, as relevant to the minor who is the subject of this petition, King testified that she still does not know "the extent or details" of petitioner's "mental health issues."

Petitioner's counsel's argument, in its entirety, was as follows:

"My client would be objecting to the .26 hearing. She's requesting from this Court an opportunity to reunify. She's finished the La Ofsted program, which is the drug program she was in as well as she's finished her parenting class.

"Unfortunately, she was unaware that there was a new social worker until April of this year, even though Ms. King testified that she became the social worker in February.

4

"Once [petitioner] learned that Ms. King was the new social worker, she was given an incorrect telephone number and actually did not make contact with Ms. King for some time. So she is—she's asking this Court to deny the .26 to allow her to have time to reunify *with her son* [the other sibling] now that she's taken care of a number of components of her case plan.

"She is currently working as a security guard at the Moscone Center, and she is taking care of her father as he is arthritic and having a difficult time.

"For these reasons, she is objecting to terminating parental rights and requesting the Court to give her an opportunity to reunify *with her son*." (Italics added.)

At this point, counsel for the other minor addressed the court: "Just briefly as to the mom's request. [¶] I would note that reunification services have already been terminated. It sounds to me that mom is requesting additional services, and that's not properly before the Court. That should have been filed as a 388 motion."[3]

The court then ruled: "I agree . . . that the proper mechanism for mother to request additional services or time to reunify would be through a 388 motion which was not filed by her. Nor is there any evidence before the Court of any change in circumstance to warrant the Court to pause and consider that as opposed to proceeding with a permanent placement of this child."

The court proceeded to terminate both parents' rights with respect to the sibling. It then moved to the minor's status review:

---

[3] "A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new or changed circumstances exist, and (2) the proposed change would promote the best interest of the child. [Citation.] The parent bears the burden to show both ' "a legitimate change of circumstances" ' and that undoing the prior order would be in the best interest of the child. [Citation.] The petition is addressed to the sound discretion of the juvenile court, and its decision will not be overturned on appeal in the absence of a clear abuse of discretion. [Citation.]" (*In re S.J.* (2008) 167 Cal.App.4th 953, 959–960.) Such a motion was made, *by the minor*, in an unsuccessful attempt to halt the termination of parental rights as to her brother. A copy of the motion was not included in the record provided by petitioner, so this court has no way of ascertaining either the precise ground(s) for the motion, or the documentary evidence submitted in support of it.

5

"I will adopt the recommended findings and set this matter for a .26 hearing to determine the most appropriate permanent plan . . . [¶] It's clear to the Court that it is time to move on for her [the minor]. She has been a dependent of the Court for a number of years, and neither parent has complied with a case plan or participated in any meaningful way with services to address the issues that brought [the minor] . . . and this family before the Court."

## REVIEW

Petitioner argues: (1) "The Court erred in not returning [the minor] to her Mother," and (2) "The Court erred in failing to order reunification services be provided to achieve reunification with [the minor]." The first argument is essentially one involving a custody or placement determination, a decision confided to the juvenile court's discretion which a reviewing court could overturn if there was a demonstrable abuse of that discretion.[4] (E.g., *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255; *Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 863.) The same test governs decisions concerning additional reunification services to the parent of a defendant minor. (E.g., *V.C. v. Superior Court* (2010) 188 Cal.App.4th 521, 528; *In re William B.* (2008) 163 Cal.App.4th 1220, 1229.)

It would not be possible to find abuse on either point because, as the court noted, petitioner had not properly asked for either. "A party on appeal cannot successfully complain because the trial court failed to do something which it was not asked to do . . . ." (*In re Cheryl E.* (1984) 161 Cal.App.3d 587, 603.)

In any event, even if a proper request had been made, both placement and reunification service decisions are grounded on the best interests of the minor. (E.g., *In re Stephanie M.* (1994) 7 Cal.4th 295, 317 [placement]; §§ 361.5, subd. (b), 366.22, subd. (b) [additional reunification services].) Moreover, at each of the post permanent planning review hearings, "it shall be presumed that continued care is in the best interests

---

[4] There is no dispute that the court had the authority to order reunification services at the post permanent planning review hearing. (§ 366.3; *In re Z.C.* (2009) 178 Cal.App.4th 1271, 1277.)

of the child, unless the parent or parents prove, by a preponderance of the evidence, that further efforts at reunification are the best alternative for the child." (§ 366.3, subd. (f).) Here, petitioner presented no evidence to overcome that presumption, no evidence, as the juvenile court noted, "of any change in circumstance," no evidence that she now acknowledged her role in the need for the dependency. Most significantly, petitioner was not forthcoming with any details of her medical condition, and what she was doing to prevent a recurrence of her involuntary commitment. If, as our Supreme Court notes, " 'a measure of a parent's future potential is undoubtedly revealed in the parent's past behavior with the child' " (*In re Jasmon O*. (1994) 8 Cal.4th 398, 424), the juvenile court would be naturally hesitant to thrust a teenager into an environment where there might be any potential risk of her having to confront such a traumatic event, particularly as it might entail physical peril. (See fn. 2, *ante*.) This sounds very much like holding the minor's best interests foremost in the court's thinking.

Finally, petitioner's failure to benefit from the 12 months of reunification services she had already received provided scant assurance that additional services would be better used.

## DISPOSITION

The petition is denied on the merits. This opinion is final forthwith. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2)(A).) The stay heretofore issued is dissolved.

_____
Richman, J.

We concur:


_____
Kline, P.J.


_____
Stewart, J.

7