Filed 9/4/24

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| DORA V., | B332985 |
| Petitioner, | (Los Angeles County Super. Ct. No. CK57270E) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING; petition for extraordinary relief, Ashley Price, Judge. Petition denied.

Los Angeles Dependency Lawyers, Law Office of Martin Lee, Dominika Campbell and Xavier Rosas for Petitioner.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for

Real Party in Interest Los Angeles County Department of Children and Family Services.

_____

## INTRODUCTION

In this case we examine the different statutory procedures and substantive rights that apply to legal guardians who are appointed by the juvenile court and legal guardians appointed by the probate court before dependency proceedings commence.

Rene V. a/k/a/ Johnny V. (born 2012)[1] was removed from the physical custody of Dora V., his legal guardian appointed by the juvenile court, pursuant to a Welfare and Institutions Code section 387 petition filed by the Los Angeles County Department of Children and Family Service (Department).[2]  The juvenile court sustained the petition and ordered family reunification services for Dora, including visitation that was liberalized to include overnight visits.  Rene refused to participate in any overnight visits and eventually refused visitation with Dora altogether.

Dora filed a petition for writ of mandate alleging the juvenile court erred when it terminated her family reunification services at an 18-month review hearing after Rene's removal and set a selection and implementation hearing pursuant to section 366.26.  In her petition, Dora contends the juvenile court failed to ensure her right to visitation was preserved by allowing Rene to refuse visits for over seven months, and she further

_____

[1]  We refer to the minor child as "Rene" in our opinion even though the parties and the record sometimes refer to him as "Renee."

[2]  All undesignated statutory references are to the Welfare and Institutions Code.

2

contends no substantial evidence supports the finding she received reasonable reunification services. We issued an order to show cause but denied Dora's request to stay the section 366.26 hearing.

As detailed below, the Legislature has created different statutory schemes and rights for legal guardians depending on whether they were appointed by the juvenile court or were appointed under the Probate Code before dependency proceedings commenced. Despite ambiguous language in certain provisions of the Welfare and Institutions Code referring to "guardians" or "legal guardians," only legal guardians appointed under the Probate Code have the same right as parents to certain presumptions of reunification and reunification services after a child has been removed from their custody. By contrast, legal guardians appointed by the juvenile court, such as Dora, are not entitled to a presumption of reunification, and they may receive reunification services in the discretion of the juvenile court if it is in the best interest of the child.

Accordingly, we deny the petition for writ of mandate and conclude the juvenile court did not abuse its discretion in denying additional reunification services.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Previous Dependency Proceedings Culminating in Dora's Legal Guardianship*

In 2012, the juvenile court initiated dependency proceedings as to Rene and his two older siblings, Valerie V. (born 2009) and Ricardo V. (born 2010). Rene was referred to the Department as a newborn due to a positive toxicology test at birth and his parents' substance abuse. After a brief release to his father, Rene and his siblings were placed with Dora, their maternal great-aunt. Their

3

mother completed reunification services and regained custody in August 2013, and the court terminated dependency jurisdiction with a family law exit order granting her full legal and physical custody in February 2014. Seven months later the siblings were again detained from their mother, the Department filed a new section 300 petition, and the siblings were again placed with Dora.

In 2017, after the children had been living with Dora for almost three years, the juvenile court appointed Dora as their legal guardian and terminated dependency jurisdiction at an uncontested permanency planning hearing set pursuant to section 366.26 after reunification services with their mother were terminated.

B.    *The First Section 387 Petition Against Dora*

In August 2021, the Department filed a section 387 supplemental petition alleging the juvenile court's previous disposition had been ineffective in protecting the children because (1) Dora physically abused the children; (2) Dora allowed a non-related extended family member, T.G., access to the children despite the fact that T.G. sexually abused Valerie on multiple previous occasions; (3) Dora allowed the children's mother unmonitored visits despite her substance abuse history and having been under the influence when caring for the children; and (4) Dora allowed the maternal grandmother unmonitored visits despite her substance abuse history and being a current user of cocaine.

In December 2021, the juvenile court sustained the counts alleging Dora permitted access to the children by T.G. and unmonitored visits by their mother. The court ordered the children to remain in Dora's custody. It repeated its previous orders that T.G. was to have no contact with any of the children

4

and that any visits by mother and maternal grandmother were to be monitored.

C.  *The Second Section 387 Petition Against Dora*

In March 2022, the Department filed a second section 387 supplemental petition again alleging the juvenile court's previous disposition had been ineffective in protecting the children.  This time the petition alleged that Dora allowed T.G. to spend time alone with Valerie on multiple occasions and that Dora physically abused Valerie by slapping and punching her.  The court detained the children with their maternal aunt V.E. and her partner M.Z., with family reunification services and monitored visitation to Dora twice a week.

In interviews, Valerie stated she preferred to stay with V.E. and M.Z., Ricardo reported he wanted to go back to Dora and felt the family was "battling over custody" of the children, and Rene stated he did not like the family arguments and did not want to be taken away from Dora's home.

In May 2022, the juvenile court sustained both counts of the section 387 petition and ordered all three children removed from Dora's physical custody with family reunification services to Dora, including a parenting program, sexual abuse awareness counseling, individual counseling, and monitored visitation, twice a week for two hours per visit.

The juvenile court set a six-month review hearing under section 366.21, subdivision (e).

D.  *The Six-month Review Hearing*

Between June 2022 and January 2023, the Department reported the children were thriving and appeared comfortable with V.E. and M.Z.

Dora was participating in court-ordered services and monitored visits with Rene and Ricardo, but Valerie did not want to have visits with her. Rene and Ricardo enjoyed the visits. Dora planned a birthday party for Rene, and he returned happy from that visit. Dora's visitation was liberalized to include unmonitored visits and overnight visits at the end of December 2022. But Rene asked to go home early on his first scheduled overnight visit, and Dora acceded because she did not want to pressure him. Rene skipped his second scheduled overnight visit with Dora to attend a BMX bike racing event. Rene expressed that he only wanted to have day visits of up to four hours, but not overnight visits with Dora.

During this time, Ricardo began to bully Rene by punching, pulling, and threatening him. Rene's therapist expressed concern the bullying could continue in Dora's home because Dora minimized the bullying, whereas V.E. and M.Z. sought to address it. In November 2022, V.E. and M.V. asked that Ricardo be removed from their care, and he was placed with other relatives.

The Department initially reported that Rene and Ricardo would like to return to Dora because they "miss[ed] her and appear[ed] to have a strong attachment to her." In December 2022, Rene began expressing that he wanted to keep living with V.E. and M.Z., and not Dora. Rene's therapist reported that Rene did not express grief from being separated from Dora.

At a contested six-month review hearing in January 2023, conducted according to the provisions of section 366.21, subdivision (e), Ricardo was returned to Dora's physical custody. The juvenile court found the Department provided Dora with reasonable services, Dora complied with her case plan, but returning Rene to Dora's physical custody would create a substantial risk of detriment to Rene. Dora did not object to the findings. The court noted Rene's reluctance to participate in

overnight visits. Dora offered to transport Rene to his BMX races during overnight visits in the future, as that was a major point of contention. The court ordered continued family reunification services and continued reasonable unmonitored visits between Rene and Dora, including overnight visits with continued discretion to the Department to liberalize visits as deemed appropriate.

The court set a 12-month review hearing pursuant to section 366.21, subdivision (f).

E.      *The 12-month Review Hearing*

In March 2023, V.E. and M.V. requested Valerie be removed from their care due to her psychiatric hospitalizations. But the Department reported Rene appeared comfortable in their home. Rene stated he wanted to continue living there because he felt happy and enjoyed outdoor activities and sports with them. Rene did not want to return to Dora's home. Dora said she would respect Rene's wishes although she still hoped that Rene would visit her and Ricardo on the weekends. She offered to attend Rene's BMX events, but V.E. refused due to V.E.'s discomfort with Dora's presence there.

Rene's therapist recommended Rene not be returned to Dora's home because the therapist feared Ricardo's bullying of Rene would resume. The therapist also did not recommend conjoint therapy between Dora and Rene because of Rene's "statements about not wanting to have any contact with [Dora]." Rene did not want any visits with Dora because he "[did] not want to return to her home and [did] not want to see her cry while she tells him to return home with her." The Department's social workers were encouraging Rene to visit Dora for at least a few hours.

7

In July 2023, the Department began assessing V.E. and M.Z. for potential selection as Rene's legal guardians because Rene refused to visit Dora and did not want to return to Dora's care. When interviewed as part of the assessment, Rene said Dora used to lock the children in their rooms, and that he was open to adoption or legal guardianship by V.E. and M.Z.

Sibling visits did not occur due to tension between Rene and Ricardo, and between V.E. and M.Z. and Dora.

At the 12-month review hearing, conducted according to the provisions of section 366.21, subdivision (f), the juvenile court found the Department provided reasonable services, Dora complied with her case plan, and returning Rene to Dora's physical custody would be detrimental. The court continued family reunification services for an additional six months. It ordered the Department to make best efforts for those services to include conjoint counseling between Rene and Dora and to set up a meeting point to facilitate visits. The court noted that Rene appeared "resistant to returning to [Dora]'s home" and that its goal in continuing reunification services was to "see if we can get the child back with the [legal] guardian."

The court set an 18-month review hearing pursuant to section 366.22.

F.     *The 18-month Review Hearing*

In August and October 2023, the Department reported Dora complied with her court-ordered case plan. Rene continued to live with V.E. and M.Z, who were meeting his needs, including meeting with his services providers. Rene expressed that he felt happy and safe in the home. During monthly visits, Department social workers encouraged Rene to have contact with Dora through in-person visits, telephone calls, and conjoint counseling sessions.

The Department reported that "[d]uring the past period of supervision, the child Rene has continued to decline all contact with [Dora], which includes conjoint/family counseling." Rene was adamant he did not want to return to Dora's home or have any visits with her. Rene said that Dora "'broke the rules,'" exposed him and the other children to T.G., who had sexually abused Valerie in the past, and she "'kept us in the room, was mean, yelled and hit me.'" Rene's therapist reported Rene also did not want to have contact with Ricardo based on the "'abusive and bullying behavior towards him'" he had experienced in the past.

Dora reported being upset with the Department for allowing Rene to remain with V.E. and M.Z after their previous request that Ricardo be removed from their care and Valerie purportedly self-harming under their supervision. Dora was also upset that Rene, V.E., and M.Z. denied a July 2023 incident in which Rene was seen alone in a grocery store with the maternal grandmother, with whom he was not allowed to have unmonitored contact. She believed Rene "'[is] lying and needs to go to foster care so he can learn,'" and expressed that "'[i]f Rene does not want to come back home[,] that is fine[.] I'm tired of waiting around[.] [W]hat do you guys expect, for me to wait over [two] years? But I don't want him to stay with [V.E.].'"

The Department concluded based on Dora's statements that, "it appears that she does not have Rene's best interest in mind as she has stated that she would prefer the child to be in foster care than the child remaining in the care of maternal aunt, [V.E.]." The Department recommended the juvenile court terminate family reunification services, set a section 366.26 hearing, and select V.E. and M.Z. as Rene's new legal guardians.

On October 30, 2023, the juvenile court held a contested 18-month review hearing, conducted according to the provisions of section 366.22. Rene's counsel asked the court to follow the

9

Department's recommendations. The Department argued in favor of its recommendations, asserting Rene was almost 12 years old, Rene had refused to visit or engage in conjoint counseling with Dora over the past year despite Department efforts to encourage contact, Rene and Ricardo were differently situated based on Rene's strained relationship with Dora, and returning Rene to Dora's physical custody would be detrimental to him.

Dora's counsel asked the court to return Rene to Dora's custody, asserting there were no safety risks in the home, Rene was similarly situated to Ricardo, who had returned to her home, Ricardo's bullying was part of a "'complicated'" sibling relationship, and Dora wanted to have visits with Rene. Dora's attorney argued the situation was "'basically the minor deciding that he doesn't want to have visits'" with Dora. Dora's counsel argued Rene did not have the right to resist visits, and whether visits occurred "'should be up to the attorneys and the parents and legal guardians.'"

The juvenile court found the Department had provided reasonable services and that Dora had complied with her case plan, but it determined that returning Rene to Dora's physical custody would be detrimental to him. The court explained: "'The child very clearly indicates that he does not wish to return to [Dora's care]. I don't believe it would be in his best interest to force that at this time. I do think it would be detrimental to the child. He has had no contact with [Dora] for one year at this time, so despite the fact that the legal guardian has completed individual counseling, parenting, and a sex abuse awareness course that is not the only thing the court has to look at today when determining whether to return the child to the legal guardian. [¶] The bigger picture shows Rene is safe and doing well in his current placement. He is continuing to refuse any contact or visits with [Dora]. He also expresses some concerns

10

reunifying with Ricardo because of the nature of their relationship wherein there has been some bullying in the past. . . .  [S]o despite the [Department's] efforts to facilitate reunification with [Dora], it's simply not possible today, and especially in the light of the time period which we find ourselves, which is after the 18-month date.'"

The court terminated Dora's family reunification services and scheduled a section 366.26 hearing.  When Dora's counsel asked if the juvenile court was terminating Dora's legal guardianship, the court indicated it declined to do so at that time as "'the Legal Guardian still has the ability to file a 388 [petition] during the pending of the .26 should you make the requisite showing.'"

Dora filed a petition for writ of mandate, and this court issued an order to show cause but declined to stay the section 366.26 hearing.  Rene's counsel joined in the Department's answer to the petition.

## DISCUSSION

Dora contends the juvenile court violated her due process rights by failing to ensure her "right to visitation" was preserved by permitting Rene to unilaterally refuse visits, citing *In re Hunter S.* (2006) 142 Cal.App.4th 1497.  (See *id.* at p. 1505 ["A visitation order which fails to protect a parent's right to visit is illusory.  If, as here, the court grants visitation, 'it must also ensure that at least some visitation at a minimum level determined by the court itself, will in fact occur.'"]; accord, *In re S.H.* (2003) 111 Cal.App.4th 310, 313.)  Dora also argues substantial evidence does not support the finding that she was provided reasonable reunification services, given the Department's "lack of efforts to schedule conjoint counseling and

11

limited efforts to effectuate the juvenile court's visitation order." Dora requests continued family reunification services under amended section 366.22, subdivision (b)(2)(A).

As stated, Dora is Rene's legal guardian appointed by the juvenile court and not his parent. Here, as in *In re Carlos E.* (2005) 129 Cal.App.4th 1408, "[a]t no point in the extensive history of this case ha[d] the parties considered the implications of [Dora]'s status as [Rene]'s legal guardian." (*Id.* at p. 1416.) Dora's arguments are all premised on the assumption that as a legal guardian she has the same rights to reunification services before termination of her legal guardianship as does a parent before termination of parental rights.

We asked the parties to file supplemental briefing addressing (1) whether a legal guardian is entitled to reunification services, and (2) if a legal guardian is not entitled to reunification services, was it an abuse of discretion for the juvenile court not to grant reunification services. After reviewing the parties' supplemental briefs, we conclude Dora does not have such rights, and that the juvenile court did not abuse its discretion.

A.    *Standard of Review*

We review a juvenile court's decision not to order reunification services for a legal guardian for abuse of discretion. (See *In re Z.C.* (2009) 178 Cal.App.4th 1271, 1284 [juvenile court has discretion to order reunification services for a legal guardian appointed by the juvenile court if in the best interests of the child]; § 366.3, subdivision (b); cf. *In re Elija V.* (2005) 127 Cal.App.4th 576, 588 [reviewing for abuse of discretion juvenile court's decision to deny discretionary reunification services to a biological father on best interests basis].) We may reverse the court's decision if it is arbitrary or irrational. (See *In re Caden C.* (2021) 11 Cal.5th 614, 641 [court abuses its

12

discretion when its determination is arbitrary, capricious or patently absurd]; *In re Stephanie M.* (1994) 7 Cal.4th 295, 318 [same].)

"[W]e review issues involving the interpretation and proper application of the dependency statutes de novo." (*In re M.F.* (2022) 74 Cal.App.5th 86, 100.)

B.   *Legal Principles and Procedures Applicable to Parents and to Legal Guardians Appointed Before Dependency Proceedings*

As detailed above, after removing Rene from Dora's physical custody, the juvenile court set and conducted six-month, 12-month, and 18-month review hearings following the provisions of sections 366.21, subdivisions (e) and (f), and 366.22 without objection from any party. We briefly summarize these statutory provisions to contextualize the arguments made by the parties.

Sections 366.21 and 366.22 apply to the reunification period mandated by section 361.5 after a child's "initial removal from the physical custody of the child's parent or guardian" pursuant to a section 300 petition, and they limit the juvenile court's discretion to deny reunification services. (See §§ 361.5, subd. (a)(1)(A), 366.21, 366.22; see also *In re Malick T.* (2022) 73 Cal.App.5th 1109, 1123.) Although the statutory language refers to a "parent or guardian" (see, e.g., §361.5) and to "parents or legal guardians" (see, e.g. §§ 366.21, 366.22), as explained in the next section, that reference is to legal guardians appointed by a probate court or otherwise existing before the original dependency proceedings, rather than (as here) a legal guardian appointed by the juvenile court. (See *In re Carrie W.* (2003) 110 Cal.App.4th 746, 758 [Welf. & Inst. Code contemplates "two types of guardians, one as the guardian appointed in dependency cases as part of a long-term plan and the other in the phrase 'parents or guardians' as the

13

equal to the parent in the context of the legal caretaker of the child *at the time dependency is initiated*" (italics added).)

Generally, "[d]uring the reunification stage after a child has been removed from a parent's custody, 'the court ordinarily must order child welfare services designed to facilitate the reunification of the family.'" (*L.C. v. Superior Court* (2024) 98 Cal.App.5th 1021, 1033; accord, *Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 624.) "Reunification services ""implement "the law's strong preference for maintaining the family relationships if at all possible.""" [Citation.] This is because "services enable [parents] to demonstrate parental fitness and so regain custody of their dependent children.""" (*L.C.,* at p. 1033; *Michael G,* at p. 624; accord, *Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1424 ["Until services are terminated, family reunification is the goal and the parent is entitled to every presumption in favor of returning the child to parental custody."].) "[T]he statutory procedures used for termination of parental rights satisfy due process requirements only because of the demanding requirements and multiple safeguards built into the dependency scheme at the early stages of the process." (*In re Hunter S., supra,* 142 Cal.App.4th at p. 1504.)

Before the 18-month review hearing, the presumption is a child should be returned to a parent or legal guardian "unless the court finds, by a preponderance of the evidence, that the return of the child to their parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§§ 366.21, subd. (e)(1); 366.22, subd. (a)(1); see *In re Jacob P.* (2007) 157 Cal.App.4th 819, 829.) If the court makes a finding of detriment at the 18-month review hearing, it then sets a section 366.26 hearing to select and implement a permanent plan and terminates reunification services to the parent or legal guardian. (See § 366.22,

14

subd. (a)(3).) "The court shall continue to permit the parent or legal guardian to visit the child unless it finds that visitation would be detrimental to the child." (*Ibid*.)

The court also must determine by clear and convincing evidence "whether reasonable services have been offered or provided to the parent or legal guardian." (§ 366.22, subd. (a)(3).) If the child is not returned to the physical custody of their parent or legal guardian at the 18-month review hearing "and the court finds that reasonable services have not been provided, . . . the court shall extend reunification services for an additional six months" (§ 366.22, subd. (b)(2)(A)) unless it "finds by clear and convincing evidence based on competent evidence from a mental health professional that extending the time period for reunification services would be detrimental to the child" (*id.*, subd. (b)(2)(B)).

The juvenile court followed the procedures outlined above but, as discussed below, different procedures apply to legal guardianships created in dependency.

C. *Legal Principles and Procedures Applicable to Legal Guardianships Established in Dependency Proceedings*

The Legislature created a different statutory procedure for legal guardians appointed by the juvenile court. Such guardianships established pursuant to sections 366.26 or 360 remain within the jurisdiction of the juvenile court even after dependency jurisdiction has been terminated.[3] (§ 366.4, subd. (a);

---

[3] "The juvenile court's power to appoint a guardian for a child who has been detained is governed by sections 360 and 366.26." (*In re Carlos E., supra,* 129 Cal.App.4th at p. 1417.) Section 360 applies if the child's parent waives reunification or family maintenance services and agrees to the guardianship.

Cal. Rules of Court, rule 5.620(d); see *In re Carlos E., supra,* Cal.App.4th at p. 1420 [discussing differences between dependency guardianships created in juvenile court versus probate guardianships]; *In re Z.F.* (2016) 248 Cal.App.4th 68, 72 ["California law recognizes two types of guardianships pertaining to minor children governed by two separate statutory schemes."].) Where, as here, a dependency guardianship has been granted to a relative, the juvenile court generally terminates dependency jurisdiction but retains jurisdiction over the child as a ward of the guardianship.  (§ 366, subd. (a)(3); Cal. Rules of Court, rule 5.740(a)(4); see *In re Jacob P., supra,* 157 Cal.App.4th at p. 829.)  Although a dependency guardianship provides more stability for a child than foster care, "it is not irrevocable" and "[c]ontinuity in a legal guardianship is not equivalent to the security and stability of a permanent caretaker." (*In re Priscilla D.* (2015) 234 Cal.App.4th 1207, 1215-1216; see also §§ 366.3, subds. (a) & (b), 366.4.)

The removal of a child from the custody of a dependency guardian is through a section 387 petition.  Section 387 authorizes the Department to file a supplemental petition to seek "[a]n order changing or modifying a previous order by removing a child from the physical custody of a parent, guardian, relative, or friend and directing placement in a foster home" or other more restrictive placement.[4]  (§ 387, subd. (a); see *In re N.B.* (2021) 67 Cal.App.5th 1139, 1146; *In re Carlos E., supra,* 129 Cal.App.4th at p. 1419,

Section 366.26 applies when a parent fails to reunify with a child and legal guardianship is selected as the permanent plan for the child.  (*See In re Carlos E., supra,* 129 Cal.App.4th at 1417.)

[4]    The standard for removal on a section 387 supplemental petition is the same as removal on an original petition.  (See *In re D.D.* (2019) 32 Cal.App.5th 985, 996; § 361.)

16

fn. 5 ["should it become necessary to alter the court's order placing the child with a legal guardian, a section 387 petition [is] the appropriate method for obtaining an order detaining the child and placing him or her in foster care"].) Removal under section 387 does not necessarily terminate the guardianship, which requires the separate set of proceedings described below. (See *In re N.B.*, at p. 1146; cf. *In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1502, fn. 6.) ["[r]emoval from the custody of a guardian and termination of guardianship are not commensurate"].)

Upon removal "where a guardianship has been created by the juvenile court in a dependency hearing, the legal guardian is not *entitled* to reunification services and no finding that adequate services were provided need be made prior to termination." (*In re Jessica C.* (2007) 151 Cal.App.4th 474, 483; see *In re Alicia O.* (1995) 33 Cal.App.4th 176, 182 ["In contrast to these procedures governing section 300 petitions, the procedure to terminate a guardianship does not mandate reunification efforts."]; *In re Carlos E., supra,* 129 Cal.App.4th at pp. 1418-1419 ["Nowhere in the statutory guidelines related to the creation and termination of a legal guardianship in the juvenile court is there any requirement that a county department of social services provide reunification services before a legal guardianship is terminated. Nor is there any requirement that the juvenile court make a finding that adequate reunification services were offered."].)

Instead, "[s]ection 366.3, subdivision (b)(2) and California Rules of Court, rule 5.740(d) set forth the procedure to terminate" legal guardianships created by the juvenile court; this is accomplished "by way of a petition to modify under section 388." (*In re N.B., supra,* 67 Cal.App.5th at pp. 1145, 1147; see *In re Z.C., supra,* 178 Cal.App.4th at p. 1277 ["[a]ny proceeding to terminate a guardianship where the court had dismissed its dependency

17

jurisdiction following the establishment of a legal guardianship, as in this case, is governed by section 366.3, subdivision (b)"].)

Section 366.3, subdivision (b)(2), provides in part: "Notwithstanding Section 1601 of the Probate Code, the proceedings to terminate a legal guardianship that has been granted pursuant to Section 360 or 366.26 shall be held either in the juvenile court that retains jurisdiction over the guardianship, as authorized by Section 366.4, or the juvenile court in the county where the guardian and child currently reside, based on the best interests of the child, unless the termination is due to the emancipation or adoption of the child."  California Rules of Court, rule 5.740(d), provides in relevant part:  "A petition to terminate a guardianship established by the juvenile court, to appoint a successor guardian, or to modify or supplement orders concerning guardianship must be filed in the juvenile court.  The procedures described in rule 5.570 must be followed, and Request to Change Court Order (form JV-180) [the form required for a section 388 petition] must be used."  (See, e.g., *In re N.B., supra,* 67 Cal.App.5th at p. 1147.)  Under section 388, "[a]ny parent or other person having an interest in a child who is a dependent child of the juvenile court or a nonminor dependent as defined in subdivision (v) of Section 11400, or the child or the nonminor dependent through a properly appointed guardian may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court or in which a guardianship was ordered pursuant to Section 360 for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court."  (§ 388, subd. (a)(1).)

In other words, after the juvenile court establishes a legal guardianship, the guardianship may be terminated pursuant to a section 388 petition and hearing, based on the best interests of the

18

child.  (See *B.B. v. Superior Court* (2016) 6 Cal.App.5th 563, 569-570; *In re Carrie W., supra,* 110 Cal.App.4th 746.)  But "[b]efore the hearing on the petition (where it must be shown that a change to the guardianship arises from a change of circumstances or evidence and would be in the minor's best interests, § 388, subd. (a)), the social services department shall prepare a report that includes an evaluation of whether the child could safely remain or be returned to the legal guardian's home without terminating the guardianship if services were provided.  (§ 366.3, subd. (b)(2).)" (*In re N.B., supra,* 67 Cal.App.5th at pp. 1145-1146.)  "If applicable, the report shall also identify recommended family maintenance or reunification services to maintain the legal guardianship and set forth a plan for providing those services." (§ 366.3, subd. (b)(2).)

"The hearing may be held as part of another regularly scheduled hearing." (*In re Carrie W., supra,* 110 Cal.App.4th at p. 757.)  "At the hearing, the petitioner . . . must show by a preponderance of the evidence termination of the guardianship serves the best interests of the child.  [Citations.]  Thereafter, the court has three options:  it may grant the petition to terminate the guardianship, deny the petition, or deny the petition and order services to maintain the guardianship." (*B.B. v. Superior Court, supra,* 6 Cal.App.5th at pp. 569-570; see Cal. Rules of Court, rule 5.740(d)(4).)  "If the petition to terminate is granted, the court may order that a new plan be developed to provide stability for the minor." (*In re N.B., supra,* 67 Cal.App.5th at p. 1146; see § 366.3, subd. (b)(2); Cal. Rules of Court, rule 5.740(d)(4).)  "Should the court terminate the legal guardianship, it may resume dependency jurisdiction over the child and order the county department of social services to develop a new permanent plan, to be presented to the court within 60 days of the termination." (*In re Carlos E., supra,* 129 Cal.App.4th at p. 1418.)

The juvenile court, while not required to do so, retains discretion to order reunification services:  "[I]f the juvenile court determines it is in the child's best interests to maintain the legal guardianship, with the social services agency providing reunification services to the legal guardian and/or the child, the court has the authority under section 366.3, subdivision (b) to order the agency to provide such services." (*In re Z.C., supra,* 178 Cal.App.4th at p. 1284.)  "[B]efore moving to a less stable placement, the court should consider whether there is a way to preserve the guardianship.  Doing so includes providing services to the legal guardian if necessary.  Section 366.3 requires that this information be given to and considered by the juvenile court and, by implication, authorizes that identified services be provided if they are likely to prevent termination of the guardianship." (*In re Jessica C., supra,* 151 Cal.App.4th at p. 484.)

Under section 366.3, subdivision (d), "If the child . . . is in a placement other than the home of a legal guardian and jurisdiction has not been dismissed, the status of the child shall be reviewed at least every six months," at which the court must "inquire about the progress being made to provide a permanent home for the child, shall consider the safety of the child," and make a set of mandatory determinations set forth in section 366.3 subdivision (e).  At a section 366.3 hearing, the best interest of the child standard is applied, rather than the presumption that a child should be returned to a parent unless there is substantial risk of detriment.  (See *In re Jacob P., supra*, 157 Cal.App.4th at pp. 828-829; see also § 366.3, subd. (h)(1).)

D.  *The Welfare and Institutions Code Does Not Provide Dora with the Right to Reunification Services Due to her Status as a Legal Guardian Appointed by the Juvenile Court*

We conclude that given the principles applicable to dependency guardianships, Dora's writ petition cannot be granted. *In re Carlos E., supra,* 129 Cal.App.4th 1408, is similar to this case and instructive. *In re Carlos E.* involved a petition for writ of mandate by a legal guardian appointed by the juvenile court seeking review of the juvenile court's order terminating reunification services after removal at a contested 18-month review hearing and setting a section 366.26 hearing. (*Id.* at p. 1412.) The legal guardian in *In re Carlos E.*, Barbara, was appointed by the juvenile court at an uncontested section 366.26 hearing after reunification services to Carlos's parents were terminated. (*Ibid.*) At that hearing, the court dismissed the dependency case, and retained jurisdiction of the guardianship under section 366.4. (*Ibid.*) The county social services agency subsequently removed Carlos from Barbara via a section 300 petition after she experienced a series of health and personal challenges and the court ordered reunification services for her.

As here, the juvenile court held review hearings up to the contested 18-month hearing, at which Barbara sought six additional months of reunification services. (*In re Carlos E., supra,* 129 Cal.App.4th at p. 1416.) The juvenile court found that reasonable services had not been provided to Barbara, in particular "the Agency had not facilitated visitation and had not initiated meaningful contact with Barbara's therapists to determine her progress and her ability to care for Carlos," but the court concluded that Carlos could not be returned to Barbara because to do so would present a substantial risk of detriment to him based on Barbara's ongoing mental health challenges. (*Ibid.*) The court declined to exercise its discretion to continue services

21

because Carlos was thriving in his new placement, and over 30 months had elapsed since his removal from Barbara.  (*Ibid.*)

The Court of Appeal rejected Barbara's argument that she was entitled to reunification services under section 361.5 and "that the references to a child's 'parents or guardians' in this section, and throughout the dependency statutes, means that a child's legal guardian, appointed by the juvenile court, has the same right to reunification services as a parent does."  (*In re Carlos E., supra,* 129 Cal.App.4th at p. 1420.)  The Court explained that "the maintenance and termination" of legal guardianships created by the juvenile court, "differs from the treatment accorded 'parents and guardians' in section 361.5," which contemplates guardians appointed by the probate court "rather than guardianships created by the juvenile court after a child has become a dependent of the court."  (*Ibid.*, citing *In re Carrie W., supra,* 110 Cal.App.4th at p. 758.)

As discussed in *In re Carrie W.*, section 366.4 specifically distinguishes dependency guardianships from legal guardianships created under the Probate Code.  (See *In re Carrie W., supra*, 110 Cal.App.4th at p. 754; see also § 366.4, subd. (a) ["Any minor for whom a guardianship has been established resulting from the selection or implementation of a permanency plan pursuant to Section 366.26, or for whom a related guardianship has been established pursuant to Section 360, . . . is within the jurisdiction of the juvenile court.  For those minors, Part 2 (commencing with Section 1500) of Division 4 of the Probate Code, relating to guardianship, shall not apply."].)  *In re Carlos E.* agreed with this analysis.  Specifically, the reference to "guardians" in "parents or guardians" in these provisions of the Welfare and Institutions Code "'appears to refer to situations where a child enters the jurisdiction of the dependency court with a guardianship previously established in probate court.  This phrasing is meant to

22

include the appropriate legal caretaker of a child within the code sections at the time dependency proceedings are initiated.'" (*In re Carlos E.*, *supra,* 129 Cal.App.4th at p. 1420, quoting *In re Carrie W., supra,* 110 Cal.App.4th at p. 758.)

The legislative history of section 366.4 supports this interpretation. The intent of the operative legislation that enacted section 366.4, Senate Bill No. 2232, was to provide a mechanism for juvenile courts to reexamine guardianships created in dependency cases and clarify the ways "a 'dependency guardianship' differs from a Probate Code guardianship." (Assem. Com. on Judiciary, Rep. Analysis on Sen. Bill No. 2232 (1989-1990 Reg. Sess.) as amended Aug. 23, 1990, p. 1; see Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 2232 (1989-1990 Reg. Sess.) Aug. 27, 1990, p. 3; see also *In re Carrie W.*, at pp. 758-759 ["'"This bill statutorily recognizes a second type of guardianship, . . . [¶] The establishment and termination of this type of guardianship is different from that for a Probate Code guardianship."'"]; *In re Heraclio A.* (1996) 42 Cal.App.4th 569, 576 [same, noting "[t]he legislative intent was to recognize the differences between the two types of guardianships"].)

*In re Carlos E.* concluded that the extensive review hearings conducted by the juvenile court "litigated issues which are simply not relevant to the question of whether it is in Carlos's best interests for Barbara to continue as his legal guardian. The Agency's failure to recognize the nature and extent of Barbara's role as Carlos's legal guardian has resulted in a needless and costly battle over the adequacy of reunification services to which Barbara was never entitled." (*In re Carlos E.*, *supra,* 129 Cal.App.4th at p. 1419.)

The appellate court further explained that "had the Agency proceeded as the Legislature intended under the dependency statutes after it detained Carlos in 2002, it should have filed a

23

petition to terminate Barbara's legal guardianship. In order to determine Carlos's best interests, the court would then have been provided with the report required under section 366.3. The court could then have determined whether it was in Carlos's best interests to deny or grant the petition or order maintenance services to Barbara." (*In re Carlos E., supra,* 129 Cal.App.4th at p. 1419.) "This, and no more, is what the Legislature intended to maintain or terminate a legal guardianship created by the juvenile court." (*Ibid.*)

Because Barbara was not entitled to reunification services, the Court concluded "she may not argue that the court erred in refusing to extend services to her past the 18-month review hearing stage. Similarly, in terminating Barbara's legal guardianship of Carlos the court's inquiry is not whether there is a substantial risk of harm to Carlos but, instead, whether the change in Barbara's status is in Carlos's best interest. For this reason, we must reject Barbara's argument that the court erred in finding that there was a substantial risk of harm to Carlos should he be returned to her care." (*In re Carlos E., supra,* 129 Cal.App.4th at p. 1421.)

We determine the reasoning of *In re Carlos E.* is persuasive and reach the same conclusions here regarding Dora's argument that the juvenile court failed to provide reasonable services by not adequately promoting and facilitating her visitation. "The Legislature has specifically provided for the creation and termination of legal guardianships *after* a child becomes a dependent of the juvenile court." (*In re Carlos E., supra,* 129 Cal.App.4th at p. 1420.) Accordingly, we must apply the correct statutory scheme for termination of legal guardianships established during dependency proceedings which, as detailed above, has no provision for mandatory reunification services where a child has been removed from a dependency guardian.

24

As a legal guardian appointed by the juvenile court, Dora is not statutorily entitled to reunification services. The authorities and arguments Dora relies on in her petition (and to which the Department responds on the merits) do not apply here, including her argument that she is entitled to an extension of services under amended section 322.22, subdivision (b)(2), because the Department failed to provide her with reasonable services and did not present evidence from a mental health provider that further reunification services would be detrimental to Rene.

As Rene's legal guardian appointed by the juvenile court, Dora "has no right to reunification services and, therefore, cannot challenge the adequacy of these services." (*In re Carlos E., supra,* 129 Cal.App.4th at p. 1417.) Nor does she have a cognizable due process argument based on a right to visitation. (See *In re Alicia O., supra,* 33 Cal.App.4th at p. 183, fn. 5 [noting that from a due process perspective, "reunification services are *not* part of the termination procedure" for dependency legal guardianships] (italics added).) "Similarly, we conclude that the juvenile court is not required to find that the return of a child to a legal guardian presents a risk of harm to the child before it terminates the legal guardianship." (*In re Carlos E.,* at p. 1417). To the extent Dora challenges the juvenile court's finding that it would be detrimental for Carlos to return to her, any challenge to this finding, due to her status as a dependency guardian, "is without merit." (*Ibid.*)

At most, as discussed in the next section, Dora can argue that under the circumstances the trial court abused its discretion by not ordering reunification services.

E.    *The Juvenile Court Did Not Abuse Its Discretion by Denying Dora Further Reunification Services*

As noted, we asked the parties to submit supplemental briefing on whether the juvenile court had discretion to order reunification services and whether it was an abuse of discretion to deny such services to Dora.  *In re Z.C., supra,* 178 Cal.App.4th at page 1281 clarified that although a legal guardian appointed by the juvenile court has no statutory right to reunification services, the court has discretion to order reunification services to preserve a dependency guardianship if it is in the best interests of the child.  Based on the record before us, we conclude the court did not abuse its discretion in finding that continued reunification services for Dora were not in Rene's best interests.

Dora argues it would be impossible to rebuild her relationship with Rene without additional reunification services.  She contends the Department failed to facilitate court ordered visitation and conjoint counseling due to Rene's refusal to participate, even though she complied with her case plan, her home was safe, and she successfully reunified with Ricardo.  Dora's position is not unreasonable, particularly given that Dora took in Rene and his siblings and raised them in her home for several years.  But the statutory scheme provides otherwise, and our task is simply to determine whether the juvenile court abused its discretion in denying her additional family reunification services in light of its consideration of what is in Rene's best interests.

"""The concept of a child's best interest 'is an elusive guideline that belies rigid definition.  Its purpose is to maximize a child's opportunity to develop into a stable, well-adjusted adult.""" (*Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1124.) Relevant considerations include the parent or guardian's fitness and history, the strength of their bond, and the child's need for

26

stability and continuity.  (See *ibid.*; *In re William B.* (2008) 163 Cal.App.4th 1220, 1228.)  Because reunification services are discretionary and granted if they are in the best interest of Rene, it is Dora's burden to demonstrate Rene would benefit from the provision of court-ordered services.  (See *Jennifer S.,* at p. 1124.)  Here, the court found that Rene "'very clearly indicates that he does not wish to return to [Dora's care]" and it concluded that "I don't believe it would be in his best interest to force that at this time."  The court further found that Rene was "safe and doing well" in his current placement, had "refuse[d] any contact or visits" with Dora for over a year, and that he had concerns about reunifying with Ricardo given Ricardo's bullying of him in the past.  The court followed the recommendations of Rene's counsel and the Department, and terminated Dora's family reunification services without an additional extension.  The juvenile court's carefully considered ruling, far from being arbitrary or irrational, was well within its broad discretion.

We agree that "'the decision to remove a dependent child from the home of a relative caretaker who has assumed the role of de facto parent for several years cannot be made lightly.  "This is particularly true where, as here, the removal decision is made in the post-permanency stage of dependency proceedings in which it has been determined that reunification of a dependent child and his or her parents is no longer possible."'"  (*In re N.B., supra,* 67 Cal.App.5th at pp. 1147-1148; *In re Jessica C., supra,* 151 Cal.App.4th at pp. 481-482.)  But in light of the circumstances presented and the record before us, we cannot say the juvenile court abused its discretion by denying additional reunification services.

27

## DISPOSITION

The petition is denied. The juvenile court is directed to follow the statutory procedures applicable to legal guardianships created in dependency.


MARTINEZ, P. J.

We concur:


SEGAL, J.


FEUER, J.